# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **JEROME D. MCMATH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION NO.:** |
| v. ) | _____ |
| ) | |
| **MEDICAL TRANSPORT OF** ) | |
| **ALABAMA LLC,** ) | |
| ) | **JURY TRIAL DEMANDED** |
| **Defendant.** ) | |

_____

## COLLECTIVE ACTION COMPLAINT
_____

Plaintiff Jerome McMath states the following on behalf of himself and all similarly situated others, pursuant to § 216(b) of the Fair Labor Standards Act of 1938 ("FLSA").

## JURISDICTION & VENUE

1. This Court has jurisdiction over Plaintiff's federal claims because they are brought pursuant to § 216(b) of the FLSA.

2. Federal question subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331.

3. Venue lies in the Northern District of Alabama pursuant to 28 U.S.C. § 1391. A substantial part of the events giving rise to Plaintiff's claims occurred in this

district, Plaintiffs reside in this district, and Defendant regularly conducts business in this district.

## PARTIES

4. Plaintiff, Jerome D. McMath ("McMath") is an individual over the age of nineteen. McMath is a resident of Jefferson County, Alabama and was an employee within the contemplation of 29 U.S.C. § 203(e)(1). McMath performed work for Defendant within the counties that comprise the Northern District of Alabama.

5. Defendant, Medical Transport of Alabama LLC ("MTA") is a foreign limited liability company. At all times relevant to this Complaint, MTA was, and is, doing business in Jefferson County Alabama, within the Northern District of Alabama. MTA is an enterprise engaged in commerce within the meaning of 29 U.S.C. 203(r) and (s).

## STATEMENT OF FACTS

6. McMath began his employment with MTA in August 2013.

7. McMath worked as a non-emergent patient driver and transported patients to and from medical appointments.

8. McMath worked part time for MTA and worked less than forty (40) hours each week. McMath held a second job to supplement his income.

9. McMath's starting pay rate was $8.50 per hour. MTA's policy was to

give employees an additional fifty cents per hour after they had been employed for ninety days. After McMath was employed by MTA for ninety days, his pay rate was increased to $9.00 per hour.

10. In the Summer of 2019, McMath complained of race discrimination and pay disparity. After he complained, McMath was given an additional twenty-five cents per hour, raising his hourly wage to $9.25.

11. MTA does not maintain a schedule informing drivers when they should arrive at work. To receive their work assignments, drivers must call an MTA dispatcher the evening before they report to work to receive their work hours and assignment for the following day.

12. MTA's list of "Drivers Responsibilities" states, "Drivers are to contact dispatch each night for a schedule between 5:45 and 6:15. If you do not you will be considered a no show."

13. When an MTA driver reports for work, they must complete numerous job duties before they are allowed to clock in.

14. MTA requires that drivers inspect the vehicles they will be driving for mechanical and other problems. If a driver discovers a problem with the vehicle, they must remedy the problem before clocking in.

15. After a driver performs this inspection, they must complete an electronic checklist form inside the vehicle and note any problems with the vehicle

and the actions they took to remedy problems with the vehicle. MTA's electronic checklist contains twenty-three (23) line items that drivers must check and mark as "normal."

16. A driver is only allowed to clock in after they have performed this vehicle inspection and completed the electronic checklist.

17. These daily vehicle inspections typically last around ten (10) minutes. However, if there is a problem with the vehicle, drivers may spend up to twenty (20) minutes remedying the problem.

18. MTA requires that drivers diligently perform these vehicle inspections for the safety of the driver and the patient. Employees can be terminated for failing to properly perform these inspections and complete the electronic checklists.

19. MTA's list of "Drivers Responsibilities" requires drivers to, "Perform pre-trip inspection of entire van each morning" and "Post trip inspection when they are finished."

20. Drivers are not paid for these required, daily vehicle inspections.

21. As an MTA driver, McMath was required to perform daily vehicle inspections, fix mechanical problems and complete the electronic checklists without clocking in and receiving wages.

22. During his employment with MTA, McMath's work schedule varied greatly. Some days, McMath worked only 4-5 hours. Other days, McMath worked

up to 14 hour shifts.

23. MTA does not allow drivers to take lunch or personal breaks. MTA does not allow drivers to eat or drink in the MTA vehicles; therefore, drivers are forced to work up to 14 hour shifts with no breaks, food, or drinks.

24. McMath was often required to work up to 14 hour shifts with no lunch or personal breaks.

25. During his employment with MTA, McMath would sometimes be asked to stop his company vehicle and wait until a patient was ready to be picked up.

26. The MTA dispatcher would call McMath and instruct him to stop his vehicle and clock out. McMath was required to stay with the MTA vehicle and to wait by his phone for the dispatcher's call regarding his next assignment.

27. The MTA "Drivers Responsibilities" states that if a driver is sitting still they "need to notify dispatch every 15 minutes."

28. McMath was required to perform activities specified by his employer, including waiting with the company vehicle, without receiving wages.

29. McMath was terminated on January 28, 2020 for allegedly failing to perform the safety inspection on his vehicle and properly complete the electronic checklist.

30. McMath has suffered damages, including unpaid minimum wages, as a

result of MTA's violation of the FLSA.

## COUNT ONE
## FAILURE TO PAY MINIMUM WAGES REQUIRED BY THE FAIR LABOR STANDARDS ACT

31. Plaintiff incorporates by reference paragraphs 1–30 as if fully recited herein.

32. The FLSA requires that covered employees be compensated for every hour worked in a workweek. *See* 29 U.S.C. § 206(a)-(b).

33. McMath and all others similarly situtated are covered employees entitled to the FLSA's protections.

34. MTA is a covered employer required to comply with the FLSA's mandates. MTA is engaged in interstate commerce for the purposes of the Fair Labor Standards Act.

35. Under the FLSA, the compensable workday begins with the employee's first compensable act and ends with the employee's last compensable act. Everything in between is compensable. *See, e.g., IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005); *DeAsensio v. Tyson Foods, Inc.*, 500 F.3d 361 (3d Cir. 2007); *Gatewood v. Koch Foods of Mississippi, LLC,* 569 F. Supp. 687, 692 (S.D. Miss. 2008); U.S. Department of Labor Wage and Hour Advisory Memorandum 2006-2, at p. 2 (May 31, 2006).

36. MTA has violated the FLSA by failing to compensate McMath and

similarly situated others for the required, daily vehicle inspections, vehicle maintenance, electronic checklist completion, and time spent waiting with the company vehicle for the next assignment.

37. In violating the FLSA, MTA acted willfully and with reckless disregard of clearly applicable FLSA provisions.

38. There are numerous similarly situated employees and former employees of MTA who have been improperly compensated in violation of the FLSA, and who would benefit from the issuance of Court-Supervised Notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to MTA and are readily identifiable and locatable through MTA's records.

39. Defendant has further engaged in a widespread pattern and practice of violating the provisions of the FLSA by failing to pay Plaintiff and all similarly situated employees and former employees in accordance with §206 of the FLSA.

40. McMath seeks declaratory and injunctive relief, award of unpaid wages, back pay, interest, nominal, compensatory and punitive damages, costs, attorneys' fees, and any and all such other relief the trier of fact may assess for himself and all similarly situated others.

**WHEREFORE**, Plaintiff, on behalf of similarly situated others, respectfully requests the following relief:

A. At the earliest possible time, Plaintiff be allowed to give notice, or that the Court issue such Notice, to all Defendant's employees in all locations during the three years immediately preceding the filing of this suit, to all other potential plaintiffs who may be similarly situated informing them that this action has been filed, the nature of the action, and of their right to opt-into this lawsuit if they worked overtime but were not paid compensation and benefits pursuant to 29 U.S.C. §216(b);

B. Plaintiff, and all other potential plaintiffs, be awarded damages in the amount of their respective unpaid compensation and benefits, plus an equal amount of liquidated damages pursuant to 29 U.S.C. §216(b), and/or prejudgment interest;

C. Award Plaintiff and all other potential plaintiffs reasonable attorneys' fees, including the costs and expenses of this action; and

D. Such other legal and equitable relief including, but not limited to, any injunctive and/or declaratory relief, to which they may be entitled.

E. Enter an Order requiring Defendants to make Plaintiffs whole by awarding them lost wages (plus interest), and liquidated damages; and

F. Plaintiff further demands a jury to try the issues when joined.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**

Respectfully submitted,

*/s/ Kenneth D. Haynes*
Kenneth D. Haynes
Attorney for Plaintiff

**OF COUNSEL:**
**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, AL 35226
Phone: (205) 879-0377
Email: kdhaynes@haynes-haynes.com

**PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL:**

Medical Transport of Alabama
1927 11th Avenue North
Bessemer, AL 35020

**PLAINTIFF'S ADDRESS:**
Mr. Jerome McMath
c/o Kenneth Haynes
Haynes & Haynes, P.C.
1600 Woodmere Drive
Birmingham, AL 35226